# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CESAR FLORES,

Petitioner,

v.

JAMES D. HARTLEY, Warden,

Respondent.

_______________________________________/

1:10-cv-00032 AWI GSA HC

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court in 1975 of first degree murder. He is serving a sentence of seven years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its March 11, 2008,

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

decision finding Petitioner unsuitable for parole. Petitioner contends the parole board's decision violated due process because no evidence supported a finding of current dangerousness.

Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Los Angeles County Superior Court on September 25, 2008. The petition was denied in a reasoned decision on December 10, 2008. Petitioner next filed a habeas petition in the California Court of Appeal, Second Appellate District. The appellate court denied the petition on January 30, 2009, ruling that some evidence supported the finding of unsuitability based on the commitment offense, prior criminal record, and institutional behavior. Petitioner then filed a habeas petition in the California Supreme Court. The petition was summarily denied on August 12, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on December 7, 2009. Respondent filed an answer to the petition on June 24, 2010. Petitioner filed a traverse on July 13, 2010.

**STATEMENT OF FACTS**[2]

On November 8, 1974, a little after midnight, Lucille Yurko was beat to death in her own bed. Anthony Scott Yurko, the victim's nine-year-old son, stated that at approximately 1:55 a.m. on that date, he was awakened by his mother's screaming and heard thumping sounds coming from his mother's bedroom. He then heard other noises including pants rubbing and sounds of steps ending with the back door opening and closing.

A witness got up at approximately 7:25 a.m. and observed the victim's room slightly ajar. He also observed the kitchen window open with the screen off and the kitchen door unlocked. The witness walked into the victim's room to inform her of the occurrences and discovered her body in blood. A jar containing coins, a jewelry box containing jewels, a card holder containing credit cards, and checkbooks were missing from the residence. Police investigators discovered an apparent attempt of entry at two locked windows. The actual point of entry to the house was indicated by leaves and debris leading from the window to the victim's bedroom. Petitioner's fingerprints were found by police investigators at the point of entry to the victim's home.

---

[2] This information is derived from the summary of the crime set forth in the Board's decision.

Petitioner's thumb print from his left hand made from apparent dried blood was found on the victim's bed headboard.

**DISCUSSION**

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II. Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is

> reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> > (C) The victim was abused, defiled or mutilated during or after the offense.
> > (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> > (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

> (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.
>
> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
>
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
>
> (7) Age. The prisoner's present age reduces the probability of recidivism.
>
> (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
> (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re

Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. State Court Decisions

The California Supreme Court summarily denied the petition. The appellate court denied the petition and found some evidence supported the Board's determination that Petitioner remained a current danger to public safety based on his commitment offense, prior criminal history, and institutional behavior. The superior court issued a reasoned decision and rejected Petitioner's claim as follows:

> The Board found petitioner unsuitable for parole after a parole consideration hearing held on March 11, 2008. Petitioner was denied parole for one year. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.
>
> The nature of the commitment offense may indicate that a prisoner poses an

unreasonable risk of danger to society when the offense is especially heinous, atrocious or cruel. [Citation.] However, the Board's inquiry must go further than simply a finding that the commitment offense was especially heinous in that the Board must also show how the heinousness of the commitment offense is indicative of "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." [Citation.] In this case, the Board found that the commitment offense was especially heinous because the motive was very trivial in relation to the offense. [Citation.] To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." [Citation.] A person whose motive for murder cannot be explained is unusually unpredictable and dangerous. [Citation.] In this case, petitioner killed his former landlady because she would not return the security deposit to petitioner's family after they vacated the apartment they had leased from her. Because this motive is materially less significant than those which conventionally drive people to commit murder, it suggests that petitioner is unusually unpredictable and dangerous. Therefore, there is some evidence to support the Board's conclusion that petitioner continues to pose an unreasonable risk of danger to society based on the commitment offense.

In this case, "the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." [Citation.] For example, in determining whether a prisoner poses a risk of danger to society, the Board should consider his institutional behavior, [Citation], as well as psychological factors [Citation]. Since entering prison, petitioner has received twenty CDC 115s, which are for serious misconduct. The last, on November 25, 1997, was for fraud. His 115 in 1996 for mutual combat, was the last of several violent discipline problems. He has also been disciplined multiple times for possession of narcotics and admitted to the Board that he had a substance abuse problem while in prison. He is currently very active in alcoholic and narcotics anonymous; however, his commitment to sobriety did not start until the late 1990s. Considering that petitioner admitted that the commitment offense occurred because he was under the influence and unable to think rationally, there is some evidence that petitioner must demonstrate that he can remain free of drugs and violence for a longer period of time before he is suitable for parole. Petitioner's psychological evaluation stated that he has a personality disorder not otherwise specified. [Citation.] This factor may also indicate that petitioner continues to pose an unreasonable risk of danger to society.

Remorse is one factor that may indicate that a prisoner is suitable for parole. [Citation.] The Board was concerned that petitioner has not gained sufficient insight into the nature and magnitude of the commitment offense. Deputy Commissioner Lushbough stated, "I thought you were rather dismissive about the victim and the victim's family." [Citation.] In *Shaputis*, the Court found support for the Governor's decision to reverse a parole grant in part because Shaputis did not show signs of remorse. For example, he referred to the premeditated killing of his wife, as "a little fight." [Citation.] Similarly, in this case, petitioner was clearly very regretful about the pain he caused his own family, but did [not] speak to the pain that he has caused to the victim's family. This is particularly troubling as the victim's son, who was only nine years old at the time, used to play basketball with petitioner. Just as in Shaputis, lack of remorse in this case is a sign that petitioner continues to pose an unreasonable risk of danger to society.

B. <u>2008 Board Decision</u>

As discussed by the superior court, the Board found Petitioner unsuitable for parole based

on the circumstances of the commitment offense, his prior criminal record, his institutional behavior, his psychological evaluation, his lack of sufficient self-help programming, and a lack of insight.

The commitment offense involved Petitioner beating a lady to death with a two-by-four in her bed, with her nine year old son in the next room, over a disagreement regarding a security deposit. The Board determined the motive for the crime was very trivial. Cal. Code Regs., tit. 15, § 2402(c)(1)(E). Clearly, in light of the facts, there was some evidence to support the Board's determination that the offense was especially heinous, atrocious or cruel.

The Board also noted Petitioner's prior criminal history which involved an escalating pattern of criminal behavior. Cal. Code Regs., tit. 15, § 2402(c)(2). Petitioner had sustained arrests and/or convictions for possession of drugs and alcohol, petty theft and two burglaries. Arguably, the burglaries could constitute crimes involving potential violence pursuant to Cal. Code Regs., tit. 15, § 2402(c)(2), but in any case, the information is relevant under Cal. Code Regs., tit. 15, § 2402(b).

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the commitment offense and past criminal history date back to 1975. As noted above, unless the record also establishes that something in Petitioner's history or current demeanor and mental state indicates that the implications regarding his dangerousness that derive from his commission of the commitment offense remain probative, the crime itself cannot provide some evidence of dangerousness. Id. at 1214.

Here, the Board also relied on Petitioner's institutional behavior pursuant to Cal. Code Regs., tit. 15, § 2402(c)(6). Petitioner had sustained twenty (20) serious rules violations while incarcerated, and many of them included violence such as mutual combat. In addition to acts of

violence, Petitioner sustained a number of serious rules violations for possession of narcotics. Certainly, the facts of Petitioner's commitment offense when considered with his negative institutional behavior provide probative evidence of Petitioner continuing to pose an unreasonable risk of danger to the public if released.

The Board also considered Petitioner's psychological evaluation in which a personality disorder was noted. Cal. Code Regs., tit. 15, § 2402(c)(5). This also constitutes a negative factor indicating present unsuitability.

The Board noted Petitioner's self-help programming with respect to drug and alcohol abuse. Petitioner admitted he had abused drugs and alcohol in the past, and he admitted he had a drug problem in prison. While Petitioner has been actively participating in Alcoholics Anonymous and Narcotics Anonymous, his participation was relatively recent. The Board determined Petitioner needed to demonstrate that he can remain free of drugs and alcohol for a longer period of time given his lifelong problems with alcohol and drugs.

Finally, the Board considered Petitioner's lack of insight into his offense. Petitioner demonstrated remorse for his family and himself. However, the Board noted he was dismissive of the pain he caused to the victim and the victim's family. A lack of insight may provide a nexus between the offense and a prisoner's current dangerousness. In re Shaputis, 44 Cal.4th 1241, 1260 (2008).

After considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. The Board determined that the circumstances of Petitioner's commitment offense and prior criminal history, along with his negative institutional behavior, lack of self-help programming, psychological evaluation, and lack of insight were more probative of a danger to the public should Petitioner be released. The state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: September 1, 2010** /s/ **Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE